Jonathan D. Lupkin(JL-0792)
Michael B. Smith (MS-3281)
**LUPKIN PLLC**
80 Broad Street, Suite 1301
New York, NY  10004
Tel: (646) 367-2771
Fax: (646) 219-4870
Email:   jlupkin@lupkinpllc.com
            msmith@lupkinpllc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE RDI CORPORATION | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) Docket No. 19-cv-10929 |
| **v.** | ) |
|  | ) |
| CHARTER COMMUNICATIONS, INC. | ) |
|  | ) |
| **Defendant.** | ) |

# COMPLAINT

Plaintiff The RDI Corporation f/k/a RDI Inc. ("RDI"), by and through its undersigned counsel, for its complaint against Defendant Charter Communications, Inc. ("Charter Communications"), alleges upon knowledge with respect to its own acts and status and upon information and belief with respect to all other matters, as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for breach of contract, and, in the alternative, unjust enrichment or quantum meruit, involving damages in excess of $75,000, exclusive of interest, costs and attorney's fees.

2. RDI is a registered Ohio corporation with its principal place of business located in Hamilton County, Ohio.

1

3. RDI's business involves, among other things, providing outbound prospecting and reconnaissance, telemarketing services, inbound solutions, qualitative and quantitative consulting services, call center services, and total enterprise solutions.

4. Upon information and belief, Charter Communications is a registered Delaware corporation with its principal place of business located in Stamford, Connecticut.

5. Charter Communications is a cable television, telephone, and internet services provider in the United States.

6. In or about 2016, Charter Communications acquired by merger Time Warner Cable Enterprises, LLC ("Time Warner"). Prior to the merger, Time Warner also was a cable television service provider in the United States.

7. Diversity jurisdiction exists between the parties in this action pursuant to 28 U.S.C. § 1332, and this Court has subject matter jurisdiction in this action, because the parties are citizens of different states (RDI is a citizen of the state of Ohio and, Charter Communications is a citizen of Delaware and/or Connecticut) and the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs.

8. Personal jurisdiction exists over the parties as this action arises out of a contract entered between RDI and Charter Communications, as successor-by-merger to Time Warner, whereby the parties contractually agreed to a mandatory forum selection clause, setting venue and jurisdiction in this Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(3) because this action arises out of a contract entered between RDI and Charter Communications as successor-by-merger to Time Warner, whereby the parties contractually agreed to a mandatory forum selection clause setting venue and jurisdiction in this Court.

## **GENERAL ALLEGATIONS**

*The Telemarketing Master Services Agreement*

10.     On or about December 1, 2014, RDI and Time Warner entered into a Telemarketing Master Services Agreement, as amended (the "Agreement"), whereby RDI agreed to provide certain outbound telemarketing and related services, including but not limited to call center services for new and/or upgraded cable, internet and/or telephone services, as described in the Agreement and any subsequent Statement of Work(s) (hereinafter, "Services and Deliverables"), in return for which Time Warner agreed to compensate RDI in accordance with the terms of the Agreement.[1]

11.     On or about May 18, 2016, Charter Communications acquired Time Warner by merger, thereby becoming a party to the Agreement as successor-by-merger.

12.     Subsequent to the merger, on or about December 21, 2016, RDI and Charter Communications, as successor-by-merger to Time Warner, entered into a Statement of Work effective December 22, 2016 ("Charter Statement of Work"), outlining additional specific requirements for delivery of and payment for the Services and Deliverables. The Charter Statement of Work is a part of and incorporated into the Agreement (the Charter Statement of Work and the Agreement hereinafter are sometimes referred to collectively herein as the "Charter Services Agreement").

*Reconciliation and Payment for Services and Deliverables rendered by RDI*

---

[1] In an abundance of caution, and pursuant to Paragraph 11.7 of the Agreement, RDI is not attaching the Agreement or any parts thereto to this Complaint. Both RDI and Charter Communications are in possession of the Agreement, and RDI will provide a true and correct copy of the Agreement to the Court upon request or agreement of the Parties.

13. Pursuant to the Charter Services Agreement, RDI provided Services and Deliverables to Charter Communications, directly or as successor-by-merger to Time Warner.

14. Pursuant to the Charter Services Agreement, the amount due and owing to RDI for the sale of new and/or upgraded cable, internet and/or telephone services was based on a "Pay for Performance Model." Charter Statement of Work, ¶10. Payment was due to RDI upon the installation of any new and/or upgraded services sold by RDI.

15. The "Pay for Performance Model" provided for the necessity of a reconciliation process at the end of each fiscal month. Charter Statement of Work, ¶11.

16. Payment by Charter Communications to RDI for these Services and Deliverables was completed as follows, pursuant to the "Pay for Performance Model" and per the parties' customary practice:

    a. Weekly payments were made by Charter Communications to RDI for any installations completed that week. This payment is hereinafter, sometimes referred to as the "Weekly Payment." Details of the Weekly Payment, including, without limitation, the specific customer accounts included by Charter Communications in the Weekly Payment, were reflected in Optymyze, a third-party system used by Charter Communications for accounting and financial services to which both parties had access during their business relationship.

    b. At the close of each fiscal month, RDI would review Charter Communications' calculation of each Weekly Payment for inconsistencies and/or inaccuracies ("RDI's Review"). RDI's Review was based upon the following sources: (i) its own records, (ii) data entered into the Charter Sales

    Information System[2], and (iii) data entered into Optymyze.

  c. Upon completion of RDI's Review, RDI would advise Charter Communications of any perceived inconsistencies and/or inaccuracies in any of the Weekly Payments and of additional amounts believed to be due and owing by Charter Communications to RDI. As was the parties' customary practice, RDI typically had one (1) week after the end of each fiscal month to complete its Review and submit all disputes. In turn, Charter Communications conducted its own review to verify additional monies owed to RDI. The timing of Charter Communications' response varied.

  d. Charter Communications made an additional payment to RDI for any additional monies owed to RDI pursuant to RDI's Review, and for any days that fell outside of the Weekly Payment (hereinafter, the "Reconciliation Payment"). As part of the Reconciliation Payment, Charter Communications used a generic code within the Charter Sales Information System to inform RDI as to whether they agreed, and therefore remitted payment, or disagreed, and therefore withheld payment, for each account/issue raised to Charter Communications in RDI's Review. Upon receipt of the Reconciliation Payment, RDI had the option to further dispute the payment and advise of any additional monies owed to it by Charter Communications.

The process described in paragraphs 16 (a) through (d) above is hereinafter sometimes collectively

---

[2] For each sales call made by RDI, RDI's employees and/or agents entered the relevant sales information into Charter Communication's icoms and CSG system-network (collectively, the "Charter Sales Information System"). Charter Communications then used this information to perform the necessary installations. The date of installation was reflected in the Charter Sales Information System, to which both parties had access during their business relationship.

referred to as the "Reconciliation Process."

*Charter Communications' Blitz Campaign*

17. On or about May 22, 2018, the parties entered into a Campaign Addendum Statement of Work Amendment adding a payment model to the Pay for Performance Model reflected in Section 10 of the Charter Statement of Work (the "Campaign Addendum"). The Campaign Addendum is a part of and incorporated into the Agreement and the Charter Statement of Work (the Campaign Addendum, together with the Agreement and the Charter Statement of Work are hereinafter sometimes referred to collectively as the "Charter PFP Agreement").

18. The Campaign Addendum specifically provides for the terms of payment for a "Blitz" campaign effective from May 22, 2018 through September 21, 2018, with an additional incentive bonus effective through July 21, 2018. *See* Campaign Addendum.

19. The Campaign Addendum further states that payment to RDI by Charter Communications for cable, telephone and/or internet services sold by RDI during this Blitz campaign will not be paid unless and until the services remain connected for thirty (30) days post installation. *Id.*

20. The Campaign Addendum additionally states that payout calculations will be through Optymyze. *Id.*

*Charter Communications Terminated the Services Agreement and Refused to Render Full Payment to RDI for Services and Deliverables Rendered by RDI*

21. On or about July 20, 2018, Charter Communications terminated the Charter PFP Agreement.

22. The last day RDI rendered Services and Deliverables to Charter Communications pursuant to the Charter PFP Agreement was on or about August 15, 2018.

23. As part of the termination of the Charter PFP Agreement, on or about August 27,

2018, Charter Communications disabled RDI's access to the Charter Sales Information System and Optymyze.

24. At the time Charter Communications terminated the Charter PFP Agreement, RDI had provided Services and Deliverables for, at least, the time period from March 1, 2018 through August 15, 2018, for which Charter Communications had yet to render full and complete payment to RDI.

25. After terminating the Charter PFP Agreement, Charter Communications refused to render full and complete payment to RDI for Services and Deliverables rendered by RDI from, at least, March 1, 2018 through August 15, 2018.

26. After terminating the Charter PFP Agreement, Charter Communications refused to participate in the Reconciliation Process and, instead, made unilateral partial payments to RDI of amounts it claimed were due and owing to RDI, which amounts were significantly less than amounts that had been paid historically after going through the Reconciliation Process during the parties' business relationship.

27. Charter Communications refused to provide the back-up for its calculation of these unilateral partial payments as dictated by the Reconciliation Process. Because Charter Communications terminated RDI's access to the Charter Sales Information System and Optymyze, RDI has no way to verify the amounts Charter Communications claimed were due and owing to RDI.

28. Despite repeated demands by RDI for payment, Charter Communications has refused to pay RDI in full for the Services and Deliverables rendered by RDI, which amount is in excess of $75,000, exclusive of interest and costs.

29. All conditions precedent to the maintenance of this action have been waived,

excused or otherwise satisfied.

## COUNT I -- BREACH OF CONTRACT

RDI sues Charter Communications and incorporates by reference Paragraphs 1-29 as if fully restated herein and further states:

30. By the terms of the Charter PFP Agreement, Charter Communications agreed to pay RDI for services rendered in connection with that Agreement.

31. The Charter PFP Agreement constitutes a valid and binding contract.

32. RDI performed fully under the Charter PFP Agreement, having provided Services and Deliverables in accordance therewith.

33. Charter Communications materially breached the Charter PFP Agreement by refusing without legal justification to pay RDI for services RDI rendered to Charter Communications pursuant to the Charter PFP Agreement, which amount is in excess of $75,000, exclusive of interest and costs.

34. RDI has suffered damages and will continue to suffer damages as a direct and proximate result of Charter Communications' breach of the Services Agreement.

## COUNT II -- UNJUST ENRICHMENT

RDI sues Charter Communications and incorporates by reference Paragraphs 1-29 as if fully restated herein and further states:

35. RDI conferred a benefit on Charter Communications by rendering services to Charter Communications, directly and/or as successor-by-merger to Time Warner.

36. Specifically, and without limitation, RDI provided to Charter Communications certain outbound telemarketing and related services, including but not limited to call center services for new and/or upgraded cable, internet and/or telephone services.

37. Charter Communications requested and/or voluntarily accepted the benefit conferred on it by RDI.

38. Charter Communications benefitted from the services rendered by RDI.

39. Charter Communications has failed and/or refused to pay RDI money it owes RDI for the services rendered by RDI for Charter Communications.

40. Under the circumstances, it would be inequitable for Charter Communications to retain the benefit that RDI has conferred upon it without paying the full value of the benefit conferred.

41. Charter Communications has been unjustly enriched to RDI's detriment, and equity and good conscience require restitution.

42. The value of the benefit conferred on Charter Communications by RDI is in excess of $75,000, exclusive of interest and costs.

43. As a result of Charter Communications' failure and/or refusal to pay, RDI has been damaged in excess of $75,000, exclusive of interest and costs.

44. RDI has no adequate remedy at law.

## COUNT III – QUANTUM MERUIT

RDI sues Charter Communications and incorporates by reference Paragraphs 1-29 as if fully restated herein and further states:

45. Charter Communications engaged RDI to provide call center and telemarketing services, as described above.

46. At all times relevant herein, RDI provided those services to Charter Communications in good faith and in a professional manner.

47. Charter Communications accepted those services and agreed to pay for them in full.

48. The reasonable value of RDI's services is in excess of $75,000, exclusive of interest and costs, all of which has been duly demanded, but has not been paid by Charter Communications.

49. RDI has no adequate remedy at law.

**WHEREFORE,** Plaintiff The RDI Corporation respectfully requests this Court grant judgment in its favor against Defendant Charter Communications, Inc., as follows:

1. as to Count I, awarding damages in an amount to be determined at trial, plus interest, costs and disbursements;

2. as to Count II, awarding an amount to be determined at trial, plus interest, costs and disbursements;

3. as to Count III, awarding an amount to be determined at trial, plus interest, costs and disbursements; and

4. granting such other, further and difference relief as the Court deems just and proper.

Dated: New York, New York
November 26, 2019

Respectfully submitted,

**LUPKIN PLLC**

By: *Jonathan D. Lupkin*
Jonathan D. Lupkin (JL-0792)
Michael B. Smith (MS-3281)
80 Broad Street, Suite 1301
New York, NY 10004
Tel: (646) 367-2771
Fax: (646) 219-4870
jlupkin@lupkinpllc.com
msmith@lupkinpllc.com

-and-

STEARNS WEAVER MILLER
  WEISSLER ALHADEFF &
  SITTERSON, P.A.
Craig S. Barnett (*pro hac vice*
  application forthcoming)
Chelsea A. Hoff (*pro hac vice*
  application forthcoming)
New River Center, Suite 2100
200 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Tel: (954) 462-9500
Fax: (954) 462-9567
Email:  cbarnett@stearnsweaver.com
        choff@stearnsweaver.com

*Counsel for Plaintiff The RDI Corporation*

4850-1155-7806, v. 3