UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE RDI CORPORATION,

    Plaintiff,

  -against-                                                  19 Civ. 10929 (CM)

CHARTER COMMUNICATIONS, INC.,

    Defendant.

------------------------------------------------------------X

## ORDER ON MATERIALS TO REMAIN UNDER SEAL

McMahon, J.:

In accordance with this Court's January 31, 2022 Memorandum Decision and Order Disposing of the Parties' Cross-Motions for Summary Judgment ("Decision"), Charter has identified by letter to the Court the portion of the papers, corresponding exhibits, and the Decision that should remain under seal ("Letter"). (*See* Dkt. No. 120). Charter also moves to seal the Letter and the attached copy of the Decision with Charter's proposed redactions. (*See* Dkt. No. 118).

Federal Rule of Civil Procedure 5.2 provides that, for good cause, a court can require redaction of certain confidential information or limit or prohibit a nonparty's remote electronic access to documents filed with the Court. *See* Fed. R. Civ. P. 5.2(d), (e). However, a presumption of public access attaches to judicial documents, such as the summary judgment briefing and associated documents, and that presumption must be weighed. *See Lugosch v. Pyramid Co. of Onondaga*, 453 F. 3d 110 (2d Cir. 2005). After the Court determines the weight to be given the presumption of access, the Court must balance "competing considerations" such as "the privacy interests of those resisting disclosure." *Id.* at 119-120 (quotation omitted).

"The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* at 1049. In weighing the presumption of access, that weight ranges from "an 'especially strong' presumption requiring 'extraordinary circumstances to justify restrictions,' to merely 'one of the interests' that may bow before 'good reasons' to deny the requested access." *Id.* at 1048 (quoting *United States v. Myers (In re Nat'l Broadcasting Co.)*, 635 F.2d 945, 952 (2d Cir.1980) and *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981)). "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050. The presumption of public access to judicial documents is only overcome if sealing "*is essential* to preserve higher values" and "*narrowly tailored* to preserve that interest." *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12 CIV. 3274 JPO, 2012 WL 3583176, at *5 (S.D.N.Y. Aug. 21, 2012) (quoting *Lugosch*, 435 F.3d at 120) (emphasis added). "Broad and general findings by the trial court . . . , are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120.

In its Letter, Charter asks that three categories of information remain under seal: (1) the specific rates at which Charter compensated RDI; (2) the specific numbers of DNC calls made by RDI each month; and (3) the specific time frame in which RDI was not complying with its scrubbing obligations prior to the May and June 2018 breaches. (Dkt. No. 120). Each of the briefs and corresponding exhibits that Charter identifies as meriting a permanent sealing order is already

filed on the ECF in two forms: one complete and unredacted version is filed under temporary seal – this Court granted this temporary seal on December 22, 2021 (*see* Dkt. No. 110) – and a second, redacted version has been filed separately and is publicly available with specific redactions of the information discussed as follows. (*See* Dkt. Nos. 45, 50, 52, 54, 56, 62, 64, 69, 71, 73, 75, 82, 84, 90, 92, 109).

**Compensation rates**. Charter explains that the dollar rate at which Charter compensated RDI for various telemarketing campaigns should remain under seal because (1) it is not material to the adjudication of the parties' summary judgment motions and thus should be afforded little weight; (2) the redactions are narrowly drawn (Charter does not seek to redact the total amounts it paid RDI during any particular month or seal the terms of the contracts governing the parties' relationship); and (3) the specific rates are confidential business information that could be exploited by Charter's competitors who employ outbound telemarketers for similarly structured campaigns. Charter proposes specific and narrow redactions of these rates in the parties' papers, accompanying exhibits, and the Decision.

The motion to seal the specific compensations rates paid to RDI for specific telemarketing campaigns that took place four or five years ago is denied. RDI's specific dollar rate of compensation may not material to adjudication of the summary judgment motions, but it certainly will be relevant at the upcoming trial on RDI's damages, and it cannot be kept confidential during that trial. For that reason alone, the presumption is especially strong, and Charter must present a significant countervailing reason to overcome that presumption. It has not done so. Charter's only countervailing consideration is that the rates are sensitive business information that could be exploited by competitors. Yet, Charter does not explain how a competitor might even use that information or what tangible injury could result from the competitor's access to these rates.

Specifically, Charter also does not explain how rates from telemarketing campaigns that occurred between May and August 2018 – four years ago – would prove useful to Charter's competitors in 2022 and beyond. Simply saying that competitors could exploit these historic rates, without explaining how they might do so, is purely conclusory.

**Specific numbers of DNC calls revealed in audits**. Charter seeks to seal the specific number of RDI's DNC calls as revealed by Charter's DNC audits. Charter does not seek to seal the fact of the calls, the time period in which they were made, or the ratio of such calls to the total calls made by RDI, as it recognizes this information played a significant role in the litigation. However, Charter explains that the specific number of calls each month should be redacted because (1) is not material to the adjudication of the summary judgment motions; (2) the redactions are narrowly drawn; and (3) the public disclosure of this information could be exploited to Charter's detriment by "commercial competitors" with "vendettas." (*See* Dkt. No. 120, at 5 (quoting *Amodeo*, 71 F.3d at 1051)). Again, Charter fails to explain what "vendettas" commercial competitors might have against it or how specifically commercial competitors could exploit this information to Charter's detriment.

The motion to seal this information is also denied. Charter acknowledges that the DNC calls played a "significant role" in this litigation. As the public was affected by the making of the DNC calls, it has a significant interest in information about those calls, including specifically the number of such calls that were made. There is, therefore, an especially strong presumption in favor of public access, which may only be overcome by a significant countervailing reason.

Charter provides none. All Charter says is, "This information could be exploited to Charter's detriment," without explaining how a rival could be aided by this information and what harm competitors could wreak with this information in hand. The harmful fact is that DNC calls

were made by Charter's agent, RDI; knowing the precise number of such calls does not compound the damage to Charter, especially as the public is already aware that the number of such calls is but a tiny fraction of the total calls placed. Moreover, the public is also aware of potentially damaging facts, such as the fact that Charter did not exercise its right to audit RDI's work for the better part of the first year of their contract and that Charter tolerated a modest number of DNC calls for several months after it did start auditing RDI's work. As all of that information is public, the Court is unpersuaded by Charter's conclusory assertion that the public should not know the number of DNC calls that RDI made.

**Specific time frame in which RDI was not complying with scrubbing obligations**. Finally, Charter asks that the specific time period for which RDI was not scrubbing lead lists be sealed. Charter explains that the specific dates are not material to the Court's decision but could again be used to Charter's detriment.

I disagree that this information was not material to the court's decision. RDI has asserted a claim for payment for a specific period of time, namely May through August 2018. Charter's defense to RDI's motion for summary judgment rested in part on Charter's claim that, for that time period in 2018 (as well as in April 2017), RDI was not in compliance with its contractual scrubbing obligations. All this information was material to the Decision.

While Charter provides only the vague rationale that the information could be used to its "detriment," the court is obviously aware that the statute of limitations has not run on the last few months of improperly scrubbed calls made by RDI. While it would be extremely difficult, at this late date, for a plaintiff's lawyer to find a customer on the DNC list who recalled receiving a telephonic solicitation for Charter's services during the last few months of RDI's contract, the possibility exists that someone might try to dig up a plaintiff whose could prove that she received

a call on behalf of Charter that could be traced to RDI. I imagine this is the reason Charter wants to keep this information confidential.

But this reason does not apply to any period prior to today's date, March 1, 2018, as all such calls fall outside of the four-year limitations period. Moreover, both the Complaint and the Answer and Counterclaims plead, in publicly available form, that RDI placed DNC calls during the period May through August 2018, and that Charter has not paid RDI for that reason. That being so, the court sees no reason to seal the fact that a few such calls were also made during March and April 2018.

**Charter's Letter and the Decision.** Finally, Charter moves to seal both the Letter and this decision. This motion is DENIED. Charter's Letter (Dkt. No. 120) itself does not contain any of the specific sensitive information that Charter argues should remain under seal but merely describes the types of information that it wishes to remain under seal and identifies the corresponding pages and portions of information in the parties' papers and corresponding exhibits that should stay sealed. As the court is denying the motion to seal, there is no reason to seal the letter. The same is true of this decision; since nothing is being sealed, there is no reason to seal a decision discussing why nothing is being sealed. (*See* Dkt. No. 120-1).

The Court will post a publicly available copy of its January 31, 2022 Decision.

### CONCLUSION

Charter's motion to seal (Dkt. No. 118) is DENIED. The Clerk is directed to terminate the open motion at Docket Number 118 and unseal Docket Number 120 and attachments.

Charter's letter request to permanently seal certain portions of the record is DENIED. The Clerk is directed to unseal Docket Numbers 46 and attachments, 51 and attachments, 53 and attachments, 55 and attachments, 57 and attachments, 63 and attachments, 70 and attachments, 72,

74 and attachments, 83, 85 and attachments, 89 and attachments, 91 and attachments and 108 and attachments. The Clerk is likewise directed to unseal this Court's January 31, 2022 Decision at Docket Number 117.

The Clerk is also directed to terminate RDI's counsel of record of the law firms of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. and Lupkin PLLC. (*See* Dkt. No. 117). RDI has until Friday, April 1, 2022 to appear by new counsel. As explained in the Court's Decision (*id.*), if RDI does not appear by new counsel by that date, the court will issue an order to show cause why RDI's claims should not be dismissed.

This constitutes the decision and order of the Court. It is a written opinion.

Dated: March 1, 2022

                                                  U.S.D.J.

BY ECF TO ALL COUNSEL